**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
BALTIMORE DIVISION**

| | |
|---|---|
| CAROLYN MILLER, TEAYL MILLER, and JENNIFER REENTS individually and on behalf of all others similarly situated,<br><br>                Plaintiffs,<br><br>     v.<br><br>MAXIM HEALTHCARE SERVICES, INC.<br><br>              Defendant. | Case No. _____<br><br>**Jury Trial Demanded** |

## CLASS ACTION COMPLAINT

Plaintiffs Carolyn Miller, Teayl Miller, and Jennifer Reents (collectively "Plaintiffs") bring this class action complaint against Maxim Healthcare Services, Inc. formerly d/b/a TravelMax ("Maxim" or "Defendant"), on behalf of themselves and all others similarly situated. Plaintiffs make the following allegations based upon personal knowledge as to their own actions and upon information and belief as to all other matters.

## NATURE OF THE ACTION

1.     Travel nurses serve a valuable role in our country's healthcare system. Hospitals, clinics, and other healthcare facilities rely on skilled travel employees to fill short-term nursing employment gaps on a temporary basis. To fill these roles, healthcare facilities utilize intermediary staffing agencies to employ the travelers, negotiate pay rates, and schedule assignments. Traveling nurses have played an especially critical role since the start of the COVID-19 pandemic, as many facilities experienced severe staffing shortages that required temporary assistance in order to continue providing quality healthcare.

2.      But a troubling practice has emerged. Maxim is offering contracts to travel nurses with a fixed-term assignment at an agreed-upon pay rate. After the nurse accepts the position and starts the assignment, Maxim makes a "take-it-or-leave-it" demand to accept less pay or be terminated. Of course, most nurses have no choice but continue working the assignment at the lower rate because they have no reasonable alternatives for comparable employment: they have already incurred travel expenses, secured short-term housing, and uprooted their lives to accept the assignment.

3.      Maxim is knowingly engaging in these "bait-and-switch" practices to maintain the significant profit margins it had become accustomed to during the COVID-19 pandemic. This lawsuit seeks recovery for the pay losses Plaintiffs and other travelers experienced as the result of Maxim's predatory business practices.

## JURISDICTION, VENUE, AND PARTIES

4.      Plaintiff Carolyn Miller is a citizen of Wisconsin who accepted a travel assignment from Maxim to work at a healthcare facility located in Wisconsin.

5.      Plaintiff Teayl Miller is a citizen of New Mexico who accepted a travel assignment from Maxim to work at a healthcare facility located in Nebraska.

6.      Plaintiff Jennifer Reents is a citizen of Texas who accepted a travel assignment from Maxim to work at a healthcare facility located in California.

7.      Maxim is a Maryland corporation with a principal place of business located in Howard County, Maryland, 7227 Lee Deforest Drive, Columbia, Maryland 21046.

8.      This Court has subject matter jurisdiction over this lawsuit under the Class Action Fairness Act, 28 U.S.C. § 1332, because this is a proposed class action in which: (1) there are at least 100 class members; (2) the combined claims of class members exceed $5,000,000.00,

exclusive of interest, attorneys' fees, and costs; and (3) Maxim and at least one class member are citizens of different states.

9.      This Court has personal jurisdiction over Maxim as to all claims asserted by Plaintiffs herein because Defendant is "at home" in Maryland and is therefore subject to general jurisdiction in this forum.

10.     Venue is proper in this District under 28 U.S.C. § 1391(b) because this is the District in which Maxim resides and a substantial part of the conduct at issue in this case occurred in this District.

## STATEMENT OF FACTS

11.     Maxim describes itself as one of the leading healthcare staffing agencies in the United States. On its website, Maxim represents that "[s]ince 1988 in response to a national nursing shortage, Maxim Staffing has connected the nation's top talent to a variety of healthcare partners. We specialize in creating meaningful career opportunities for medical professionals including nurses, allied health professionals, locum tenens, travel nurses, medical coders, and more. Our healthcare staffing and workforce management services are focused on hospitals, schools, government programs, correction facilities, and managed care organizations."[1]

12.     To fill temporary positions, healthcare facilities in need of temporary employment offer staffing agencies like Maxim a "bill rate" which is a total amount they are willing to pay the staffing agency for every hour worked by a traveling nurse. The staffing agency then deducts costs, overhead, and profit margin from the bill rate and advertises the hourly rate it is willing to pay a traveling nurse to accept the facility assignment.

---

[1] https://www.maximstaffing.com/about-maxim-staffing/.

13.     Maxim utilizes a form "travel assignment agreement" for its traveling employees that include the following material terms: the facility name and address along with the start and end date for the assignment, the traveler's hourly pay rate and scheduled hours per week, the traveler's weekly meals and incidentals allowance, the traveler's weekly lodging allowance, and an overtime rate that applies to all hours worked in excess of 40 hours per week.

14.     After accepting a travel assignment, Maxim knows that travel employees must move to the location of the facility, secure short-term housing, and incur other travel and housing related costs at their own expense in order to comply with their obligations under the agreement.

**Plaintiff Carolyn Miller**

15.     On or before December 21, 2021, Maxim made an employment offer to Plaintiff Carolyn Miller which included a fixed-term travel assignment in Milwaukee, Wisconsin.

16.     The employment agreement offered Carolyn Miller a position at Froedtert Hospital in Milwaukee, Wisconsin from January 24, 2022, until April 23, 2022, with the following compensation package: a base hourly pay rate of $125.00 with a minimum of 36 scheduled hours per week; an overtime hourly pay rate of $187.50; a weekly meals and incidentals allowance of $385.00; and a weekly lodging allowance of $672.00.

17.     In reliance on the foregoing material terms, Carolyn Miller accepted Maxim's offer of employment by executing Maxim's form travel assignment agreement on December 21, 2021. To comply with her duties under the agreement, Carolyn Miller traveled from her home, Eau Claire, Wisconsin, to Milwaukee, Wisconsin, at her own expense, secured short-term living arrangements, and forwent other employment opportunities.

18.     On April 11, 2022, approximately 11 weeks after starting the assignment, Maxim made Carolyn Miller a "take-it-or-leave-it" demand to accept less pay or be terminated.

Specifically, Maxim demanded that Carolyn Miller accept an approximately 28% reduction in her base hourly pay rate, from $125.00 to $90.00, and overtime hourly pay rate, from $187.50 to $135.00, in order to complete the previously agreed-upon assignment.

19.     But unbeknownst to Carolyn Miller, Maxim had in fact already unilaterally reduced her pay on March 25, 2022 without first notifying her. On April 11, 2022, Carolyn Miller noticed the reductions on her pay stubs and contacted Maxim about them—at which time Maxim acknowledged the reductions and made the "take-it-or-leave-it" demand.

20.     Having already spent substantial time and money securing the assignment and taking the steps necessary to ensure compliance with her obligations under the agreement, and unable to find comparable employment in such a short period of time, Carolyn Miller had no choice but to continue working the assignment at the lower rate.

21.     Plaintiff Carolyn Miller continued her assignment from April 11, 2022, through the end of her original assignment on April 23, 2022, in accordance with her duties. In doing so, she suffered monetary losses. In total, at a minimum, the difference between the value of the original agreement and the value of the unilateral pay reduction was more than $5,000.

**Plaintiff Teayl Miller**

22.     On or before January 31, 2022, Maxim made an employment offer to Plaintiff Teayl Miller which included a fixed-term travel assignment in Omaha, Nebraska.

23.     The employment agreement offered Teayl Miller a position at CHI Immanuel Hospital in Omaha, Nebraska from March 8, 2022, until June 4, 2022, with the following compensation package: a base hourly pay rate of $108.50 with a minimum of 48 scheduled hours per week; an overtime hourly pay rate of $162.75; a weekly meals and incidentals allowance of $448.00; and a weekly lodging allowance of $770.00.

24.     In reliance on the foregoing material terms, Teayl Miller accepted Maxim's offer of employment by executing Maxim's form travel assignment agreement on January 31, 2022. To comply with her duties under the agreement, Teayl Miller traveled from her home in New Mexico to the assignment in Nebraska at her own expense, secured short-term living arrangements, and forwent other employment opportunities.

25.     On March 2, 2022, approximately six days before the assignment's start date, Maxim made Teayl Miller a "take-it-or-leave-it" demand to accept less pay or be terminated. Specifically, Maxim demanded that Teayl Miller accept an approximately 25% reduction in her base hourly pay rate, from $108.50 to $82.50, her overtime hourly pay rate, from $162.75 to $123.75, and her guaranteed weekly hours from 48 to 36, in order to complete the previously agreed-upon assignment.

26.     Having already spent substantial time and money securing the assignment and taking the steps necessary to ensure compliance with her obligations under the agreement, and unable to find comparable employment in such a short period of time, Teayl Miller had no choice but to begin the assignment at the lower rate.

27.     Plaintiff Teayl Miller continued her assignment in accordance with her duties from March 8, 2022, until around or about March 22, 2022—when Maxim made another "take-it-or-leave-it" demand to accept even less pay or be terminated, which she refused. In doing so, she suffered monetary losses. In total, at a minimum, the difference between the value of the original agreement and the value of the unilateral pay reduction was more than $25,000.

**Plaintiff Jennifer Reents**

28.     On or before October 7, 2021, Maxim made an employment offer to Plaintiff Jennifer Reents which included a fixed-term travel assignment in Merced, California.

6

29.     The employment agreement offered Jennifer Reents a position at Dignity Health –
Mercy Medical Center in Merced, California from November 3, 2021, until February 5, 2022, with
the following compensation package: a base hourly pay rate of $147.50 with a minimum of 48
scheduled hours per week; an overtime hourly pay rate of $221.25; a weekly meals and incidentals
allowance of $385.00; and a weekly lodging allowance of $672.00.

30.     In reliance on the foregoing material terms, Jennifer Reents accepted Maxim's offer
of employment by executing Maxim's form travel assignment agreement on October 7, 2021. To
comply with her duties under the agreement, Jennifer Reents continued to travel away from her
home in Converse, Texas—in fact, directly from the location of her last travel assignment in
Riverside, California—to Merced, California, at her own expense, secured short-term living
arrangements, and forwent other employment opportunities.

31.     On October 26, 2021, approximately eight days before the assignment's start date,
Maxim made Jennifer Reents a "take-it-or-leave-it" demand to accept less pay or be terminated.
Specifically, Maxim demanded that Jennifer Reents accept an approximately 12% reduction in her
base hourly pay rate, from $147.50 to $129.50, and overtime hourly pay rate, from $221.25 to
$194.25, in order to complete the previously agreed-upon assignment.

32.     Having already spent substantial time and money securing the assignment and
taking the steps necessary to ensure compliance with her obligations under the agreement, and
unable to find comparable employment in such a short period of time, Jennifer Reents had no
choice but to begin the assignment at the lower rate.

33.     On November 2, 2021, the day before her assignment's start date, Maxim informed
Jennifer Reents that her start date was being delayed. Maxim thereafter delayed her start date on

Case 1:22-cv-01782-JRR   Document 1   Filed 07/20/22   Page 8 of 23


two more occasions, ultimately informing Jennifer Reents that she would not be able to start the assignment until the following month at the earliest.

34.     Through Maxim's unilateral pay reduction and seemingly endless delays, Maxim effectively prevented Jennifer Reents from working or performing her duties under the agreement and she had no choice but to return home. At a minimum, Jennifer Reents lost the entire value of the original agreement which was more than $100,000.

35.     As described above, each Plaintiff relied on the material terms of their employment agreements including: the fixed assignment term, the payment package, and the guaranteed hours or days in accepting the offer; as the assignment had to be worth foregoing other employment, relocating, and incurring the associated professional and personal costs of accepting the travel assignment. In addition, each Plaintiff relied on the fact the foregoing material terms could not be changed without additional consideration and the reasonable expectation that Defendant would act in good faith and fair dealing and honor its promises or representations. Plaintiffs would not have accepted the agreements had they known that Maxim would violate the terms and spirit of their agreements.

36.     By making the take-it-or-leave-it demands described above, always after Plaintiffs relied on Maxim's representations and undertook obligations under the agreements, Maxim breached each of its contracts with Plaintiffs—specifically the promises of employment at a specified rate of pay for a fixed-term assignment. Maxim made these take-it-or-leave-it-demands in breach of the express terms of the contract and implied duty of good faith and fair dealing.

37.     There is no legal justification for Maxim's conduct. Even if Maxim's client no longer needed as much staff or decided to reduce the bill rate, for example, nothing in the terms of

travel assignment agreements authorize Maxim to unilaterally adjust pay rates to account for new circumstances, whether foreseeable or not.

38. The "revised" agreements that some Plaintiffs were coerced to sign are not enforceable because an effective contract modification or accord requires the exchange of new consideration. As alleged herein, there was no exchange of new consideration because Plaintiffs were compelled to undertake the same obligations for less pay. Consequently, Maxim cannot relieve itself of its contractual obligations under one contract by coercing acceptance of a second contract with less favorable terms.

## CLASS ACTION ALLEGATIONS

39. <u>Class Definition</u>: Plaintiffs bring this action individually and on behalf of other similarly situated individuals. Pursuant to Federal Rules of Civil Procedure 23(b)(3), 23(b)(2), and/or 23(c)(4), Plaintiffs seek certification of the foregoing classes and subclasses, defined as follows:

> <u>The Class</u>: All persons who entered into a Travel Assignment Agreement with Maxim and whose total compensation was reduced before the end of the agreed upon term.

> <u>State Wage Payment Laws Class</u>: All persons who entered into an Assignment Confirmation Notice with Cross Country to work at a facility or location in Alaska, Arizona, Arkansas, Colorado, Connecticut, Delaware, Florida, Georgia, Hawaii, Idaho, Illinois, Indiana, Iowa, Kansas, Kentucky, Louisiana, Massachusetts, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Jersey, New Mexico, New York, North Carolina, North Dakota, Ohio, Oklahoma, Oregon, Pennsylvania, Rhode Island, South Carolina, South Dakota, Utah, Vermont, Virginia, Washington, West Virginia, Wisconsin, or Wyoming and whose total compensation was reduced before the end of the agreed upon term.

> <u>The California Class</u>: All persons who entered into a Travel Assignment Agreement with Maxim to work at a facility or location in California, or who traveled from California to an assignment in another state, and whose total compensation was reduced before the end of the agreed upon term.

40.     Excluded from the Class are the Court and its officers, employees, and relatives; Maxim and its subsidiaries, officers, and directors; and governmental entities.

41.     <u>Numerosity</u>: the Class consists of members so numerous and geographically dispersed that joinder of all members is impracticable, as Defendant employs thousands of similarly situated individuals across the United States.

42.     All members of the Class are ascertainable by reference to objective criteria, as Maxim has access to addresses and other contact information for Class members that can be used for notice purposes.

43.     <u>Common Questions of Law and Fact Predominate</u>: There are many questions of law and fact common to Plaintiffs and the Class, and those questions substantially predominate over any questions that may affect individual members of the Class. Common questions include:

    a.   Did Maxim make actionable misrepresentations or omissions?

    b.   Were Maxim's promises, representations, or omissions false or misleading?

    c.   Did Maxim intend for Plaintiffs and the Class to rely on its promises, representations, or omissions?

    d.   Should Maxim have known that such promises or representations would cause justifiable or reasonable reliance?

    e.   Did Maxim owe a duty to disclose to Plaintiffs and the Class to not conceal the truth?

    f.   Did Maxim's conduct in reducing compensation packages breach the travel assignment agreements?

    g.   Did Maxim act in bad faith?

    h.   Did Maxim engage in fraudulent concealment?

    i.   Did Cross Country's conduct violate state wage payment statutes?

44.    <u>Typicality</u>: Plaintiffs' claims are typical of other members of the Class because all of the claims arise from the same course of conduct by Maxim, the same fraudulent business practice, and are based on the same legal theories.

45.    <u>Adequacy of Representation</u>: Plaintiffs are adequate class representatives because their interests do not conflict with the interests of the Class members whom they seek to represent. Plaintiffs have retained counsel with substantial experience in prosecuting complex and class action litigation. Plaintiffs and their counsel are committed to vigorously prosecuting this action on behalf of Class members and have the financial resources to do so. The Class members' interests will be fairly and adequately protected by Plaintiffs and their counsel.

46.    <u>Superiority of Class Action</u>: Class treatment is superior to individual treatment, as it will permit a large number of similarly situated persons to prosecute their respective class claims in a single forum, simultaneously, efficiently, and without unnecessary duplication of evidence, effort, and expense that numerous individual actions would produce.

47.    To the extent not all issues or claims, including the amount of damages, can be resolved on a class-wide basis, Plaintiffs invoke Federal Rule of Civil Procedure 23(c)(4), reserving the right to seek certification of a class action with respect to particular issues, and Federal Rule of Civil Procedure 23(c)(5), reserving the right to divide the class into subclasses.

**<u>FIRST CAUSE OF ACTION: BREACH OF CONTRACT</u>**
*<u>On Behalf of Plaintiffs and the Class</u>*

48.    Plaintiffs hereby repeat, reiterate, and incorporate by reference each of the foregoing allegations with the same force and effect as if set forth herein.

49.    Maxim offered Plaintiffs and class members employment by certain written terms in the agreement.

50.     As consideration for their agreement, Maxim agreed, among other things, to employ, pay, and provide certain benefits to Plaintiffs and class members under their respective agreements; and Plaintiffs and class members agreed, among other things, to provide undertake certain obligations.

51.     The parties mutually assented to the agreement.

52.     Plaintiffs and class members accepted Maxim's offer of employment by executing the agreement.

53.     After the parties entered the agreement, Maxim materially breached the agreement by failing to pay Plaintiffs and class members the amounts they promised and/or lowering their total compensation package by reducing their amount of guaranteed hours or days.

54.     In making take-or-leave-it pay reductions under circumstances where Maxim knew Plaintiffs and class members would have no choice but to continue working despite the unilateral pay reduction, Maxim also breached the implied covenant of good faith and fair dealing inherent in the parties' agreements.

55.     Before the breaches, all conditions precedent had been fulfilled.

56.     Plaintiffs' and class members' damages would not have occurred but for Maxim's breaches and Maxim's breaches proximately caused Plaintiff's and class members' damages.

57.     Following the breaches, Plaintiffs and class members made all reasonable efforts to mitigate resulting damages.

58.     Plaintiffs' and class members' damages include the difference in compensation agreed to under the agreement and the actual compensation Plaintiffs and class members received, as well as the costs, expenses, and losses Plaintiffs and class members incurred as a natural and foreseeable result or consequence of Maxim's breaches.

## SECOND CAUSE OF ACTION: PROMISSORY ESTOPPEL
### *On Behalf of Plaintiffs and the Class*

59.     Plaintiffs hereby repeat, reiterate, and incorporate by reference each of the foregoing allegations with the same force and effect as if set forth herein.

60.     Maxim made clear and unambiguous promises to Plaintiffs and class members regarding their pay rates that it knew or should have known would induce Plaintiffs and class members to enter into employment agreements with Maxim and incur certain costs and expenses associated with relocation and housing.

61.     Plaintiffs and class members reasonably relied on such promises in entering into employment agreements, relocating, and incurring certain expenses, costs, and losses.

62.     Maxim's promises in fact induced Plaintiffs and class members to enter into employment agreements, relocate, and incur certain expenses, costs, and losses.

63.     It would be unjust to allow Maxim to profit from making such inducing promises and not fulfilling them.

64.     This injustice can only be avoided by forcing Maxim to fulfill these promises.

## THIRD CAUSE OF ACTION: UNJUST ENRICHMENT
### *On Behalf of Plaintiffs and the Class*

65.     Plaintiffs hereby repeat, reiterate, and incorporate by reference each of the foregoing allegations with the same force and effect as if set forth herein.

66.     Plaintiffs and class members assert this cause of action in the alternative to their cause of action for breach of contract.

67.     Plaintiffs and class members conferred a benefit upon Maxim by filling open healthcare positions that permitted Maxim to profit as an intermediary staffing agency.

68.     Maxim appreciated and had knowledge of the benefit Plaintiffs and class members conferred on it.

69.     To obtain and maximize this benefit, its profits, Maxim acted in bad faith, with premeditation, or with actual malice toward Plaintiffs and class members by making material false or misleading representations of fact about their pay rates and total compensation to induce Plaintiffs and class members to fill open positions and work for less pay and total compensation.

70.     Maxim, by making take-it-or-leave-it demands to reduce Plaintiffs' and class members' pay rates or total compensation in the middle of their contractual terms, kept money that was contractually promised to Plaintiffs and class members and, therefore, accepted and retained benefits under such circumstances as to make it inequitable for Maxim to retain such benefits without payment of its value.

71.     Under the circumstances, Maxim should in justice and fairness be compelled to give its benefit to Plaintiffs and class members.

## FOURTH CAUSE OF ACTION: FRAUDULENT INDUCEMENT
### *On Behalf of Plaintiffs and the Class*

72.     Plaintiffs hereby repeat, reiterate, and incorporate by reference each of the foregoing allegations with the same force and effect as if set forth herein.

73.     Maxim made material representations of fact to Plaintiffs and class members about their pay rates and total compensation that were false or misleading.

74.     At the time it made such representations, Maxim knew that its representations were false and it would pay Plaintiffs and class members less than the amounts it promised if it so determined.

75.     Maxim's misrepresentations were made with the purpose to defraud Plaintiffs and class members.

76.     At the time it made such representations, Maxim knew Plaintiffs and class members would justifiably rely on its representations in entering into their travel assignment agreements, relocating, and incurring certain expenses, costs, and losses.

77.     Maxim had a duty to disclose its representations were false or misleading because Maxim had superior knowledge that was not reasonably available to Plaintiffs and class members, Plaintiffs and class members were entitled to know given the relation of trust and confidence between them, and disclosure was necessary to prevent Plaintiffs and class members from being misled or mistaken.

78.     Plaintiffs and class members did not know Maxim's representations regarding their pay rate were false or misleading and had a right to rely on and reasonably relied on them in entering into travel assignment agreements, relocating, and incurring certain expenses, costs, and losses.

79.     As a result of Maxim's fraudulent inducement, Plaintiffs and class members sustained damages as described herein.

80.     Maxim's false or misleading representations were reprehensible and Maxim should be subject to punitive damages, in that they were made in bad faith, premeditated, and done with actual malice.

## FIFTH CAUSE OF ACTION: FRAUDULENT CONCEALMENT
### *On Behalf of Plaintiffs and the Class*

81.     Plaintiffs hereby repeat, reiterate, and incorporate by reference each of the foregoing allegations with the same force and effect as if set forth herein.

82.     As their prospective employer, Maxim owed Plaintiffs and class members a duty to disclose the fact that Maxim would unilaterally reduce their pay rates or total compensation after they accepted a position that required relocating, and incurring certain expenses, costs, and losses.

83.     Maxim intended to defraud or deceive Plaintiffs and class members.

84.     Plaintiffs and class members justifiably relied on Maxim's fraudulent concealment by entering into employment agreements, relocating, and incurring certain expenses, costs, and losses.

85.     As a result of Maxim's fraudulent inducement, Plaintiffs and class members sustained damages as described herein.

86.     Maxim's fraudulent concealment was reprehensible and Maxim should be subject to punitive damages, in that they were made in bad faith, premeditated, and done with actual malice.

### SIXTH CAUSE OF ACTION: NEGLIGENT MISREPRESENTATION
#### *On Behalf of Plaintiffs and the Class*

87.     Plaintiffs hereby repeat, reiterate, and incorporate by reference each of the foregoing allegations with the same force and effect as if set forth herein.

88.     As their prospective employer, Maxim owed Plaintiffs and class members a duty or reasonable care to not make false or misleading statements regarding their employment.

89.     Maxim knew, should have known, or recklessly disregarded that its representations to Plaintiffs and class members regarding their pay rates and overall compensation reflected in the travel assignment agreements were false or misleading, because it was reasonably foreseeable that Maxim would make a "take-it-or-leave-it" demand to accept less compensation or be terminated after acceptance of the initial offer.

90.     Maxim intended for Plaintiffs and class members to act on the false or misleading statements.

91.     Maxim knew or should have known that Plaintiffs and class members would rely on the false or misleading statements.

92.     Maxim breached its duty of reasonable care by making the false or misleading statements and thus failing to act as a reasonably prudent person would have under the same or similar circumstances by not making those statements.

93.     Plaintiffs and class members justifiably relied on Maxim's negligent misrepresentations by entering into employment agreements, relocating, and incurring certain expenses, costs, and losses.

94.     As a result of Maxim's negligent misrepresentations, Plaintiffs and class members sustained damages as described herein.

<u>**SEVENTH CAUSE OF ACTION: VIOLATION OF**</u>
<u>**STATE WAGE PAYMENT LAWS**</u>
*On Behalf of Plaintiffs and the State Wage Payment Laws Class*

95.     Plaintiffs hereby repeat, reiterate, and incorporate by reference each of the foregoing allegations with the same force and effect as if set forth herein.

96.     At all times relevant to this action, Plaintiffs and class members were employed by Maxim.

97.     Maxim's course of conduct described above violated wage payment laws of the states listed herein by failing to pay all wages due or owed to Plaintiffs and other similarly situated employees for which the company had agreed to pay. Maxim's failure to pay all wages due and owing to its employees is in violation of the following state wage payment laws, each of whose relevant terms are materially equivalent such that a common violation may be established on a class-wide basis:

      a.   Alaska – Alaska Stat. § 23.05.140 *et seq.*;

      b.   Arizona – Ariz. Rev. Stat. Ann. § 23–351 *et seq.*;

      c.   Arkansas – Ark. Code Ann. § 11–4–401 *et seq.*;

      d.   Colorado – Colo. Rev. Stat. § 8–4–101 *et seq.*;

e.  Connecticut – Conn. Gen. Stat. Ann. § 31–71b *et seq.*;

f.  Delaware – Del. Code Ann. tit. 19, § 1102 *et seq.*;

g.  Florida – Fla. Stat. Ann. § 448.08 *et seq.*;

h.  Georgia – Ga. Code Ann. § 34–7–2 *et seq.*; Ga. Code Ann. § 51-1-6 *et seq.*;

i.  Hawaii – Haw. Rev. Stat. § 388–2 *et seq.*;

j.  Idaho – Idaho Code Ann. § 45–608 *et seq.*;

k.  Illinois – 820 ILCS 115/1 *et seq.*;

l.  Indiana – Ind. Code Ann. § 22–2-5–1 *et seq.*;

m.  Iowa – Iowa Code Ann. § 91A.3 *et seq.*;

n.  Kansas – Kan. Stat. Ann. § 44–314 *et seq.*;

o.  Kentucky – Ky. Rev. Stat. Ann. § 337.020 *et seq.*;

p.  Louisiana – La. Rev. Stat. Ann. § 23:631 *et seq.*;

q.  Massachusetts – Mass. Gen. Laws Ann. ch. 149, § 148 *et seq.*;

r.  Minnesota – Minn. Stat. Ann. § 181.101 *et seq.*;

s.  Mississippi – Miss. Code. Ann. § 71–1–35 *et seq.*;

t.  Missouri – Mo. Ann. Stat. § 290.080 *et seq.*;

u.  Montana – Mont. Code Ann. § 39–3–204 *et seq.*;

v.  Nebraska – Neb. Rev. Stat. § 48–1230 *et seq.*;

w.  Nevada – Nev. Rev. Stat. Ann. § 608.060 *et seq.*;

x.  New Hampshire – N.H. Rev. Stat. Ann. § 275:43 *et seq.*;

y.  New Jersey – N.J. Stat. Ann. § 34:11–4.2 *et seq.*;

z.  New Mexico – N.M. Stat. Ann. § 50–4–26 *et seq.*;

aa. New York – N.Y. Lab. Law § 191 *et seq.*;

bb. North Carolina – N.C. Gen. Stat. Ann. § 95–25.6 *et seq.*;

cc. North Dakota – N.D. Cent. Code Ann. § 34–14-02 *et s–q.*;

dd. Ohio – Ohio Rev. Code Ann. § 4113.15 *et seq.*;

ee. Oklahoma – Okla. Stat. Ann. tit. 40, § 165.2 *et seq.*;

ff. Oregon – Or. Rev. Stat. Ann. § 652.120 *et seq.*;

gg. Pennsylvania – 43 Pa. Stat. Ann. § 260.3 *et seq.*;

hh. Rhode Island – R.I. Gen. Laws Ann. § 28–14–2.2 *et seq.*;

ii. South Carolina – S.C. Code § 41–10–10 *et seq.*;

jj. South Dakota – S.D. Codified Laws § 60–11–1 *et seq.*;

kk. Utah – Utah Code Ann. § 34–28–3 *et seq.*;

ll. Vermont – Vt. Stat. Ann. tit. 21, § 342 *et seq.*;

mm.    Virginia – Va. Code Ann. § 40.1–29 *et seq.*;

nn. Washington – RCW 49.48 *et seq.*;

oo. West Virginia – W. Va. Code Ann. § 21–5–3 *et seq.*;

pp. Wisconsin – Wis. Stat. Ann. § 109.03 *et seq.*; and

qq. Wyoming – Wyo. Stat. Ann. § 27–4-101 *et seq.*

98.    Maxim maintains a company–wide policy and practice of failing and refusing to pay wages due and owing to Plaintiffs and other similarly situated employees, and said policy is willful in nature and not the result of a good-faith mistake.

## EIGHTH CAUSE OF ACTION: VIOLATION OF CALIFORNIA LABOR CODE § 970
*On Behalf of Plaintiff Reents and the California Class*

99.    Plaintiffs hereby repeat, reiterate, and incorporate by reference each of the foregoing allegations with the same force and effect as if set forth herein.

100.     California Labor Code § 970 prohibits employers from influencing or persuading an employee to relocate from one place to another for work, by means of knowingly false misrepresentations regarding, among other things, the kind, character, or existence of such work; the length of time such work will last; or the compensation therefor. Cal. Lab. Code § 970.

101.     Maxim made representations to Plaintiff Reents and members of the California Class (collectively "Plaintiffs" for purposes of this count) concerning the kind or character of the work, the length of time the work would last, or the compensation therefor.

102.     Maxim's representations were false, for the reasons alleged herein.

103.     Maxim knew when the representations were made that they were false.

104.     Maxim intended that Plaintiffs would rely on its false representations.

105.     Plaintiffs relied on Maxim's false representations and relocated for the purpose of working for Maxim.

106.     As a result of Maxim's misrepresentations, Plaintiffs were harmed, and their reliance on the Maxim's representations was a substantial factor in causing such harm.

## NINTH CAUSE OF ACTION: VIOLATION OF THE CALIFORNIA UNFAIR COMPETITION LAW CAL. BUS. & PROF. CODE § 17200
### *On Behalf of Plaintiff Reents and the California Class*

107.     Plaintiffs hereby repeat, reiterate, and incorporate by reference each of the foregoing allegations with the same force and effect as if set forth herein.

108.     The California Unfair Competition Law prohibits "any unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200, *et seq.* Maxim has engaged in business acts and practices that, as alleged above, constitute unfair competition in violation of Business and Professions Code section 17200.

**Unlawful**

109.    Maxim's unlawful conduct under the Unfair Competition Law includes, but is not limited to, violating California Labor Code § 970, and the other statutes and regulations alleged herein.

**Unfair**

110.    Maxim's business practices, as alleged herein, violate the "unfair" prong of the Unfair Competition Law because they resulted in Plaintiffs and members of the California Class being misled and denied pay for wages they earned and were promised pursuant to their binding employment agreements. Further, said business practices offend established public policy and are immoral, unethical, and unscrupulous or substantially injurious to employees.

111.    Any reasons, justifications, or motives that Maxim may offer for the practices described herein are outweighed by the gravity of harm to the victims. The injuries suffered by Plaintiffs and the California Class are substantial and are not outweighed by any countervailing benefits to consumers or competition.

**Fraudulent**

112.    Maxim's conduct, as described herein, is fraudulent because it is likely to deceive members of the public.

113.    Maxim's bait-and-switch tactics were indeed calculated to deceive—and in fact did deceive—Plaintiffs and members of the California Class into accepting travel nursing assignments at a promised rate of pay, only to have that promised rate reduced after they had undertaken obligations under the agreement.

114.    Plaintiffs and members of the California Class have standing to pursue this cause of action because they suffered injury in fact and lost money as a result of Maxim's misconduct described herein.

115.    Furthermore, Plaintiffs and the California Class seek restitutionary disgorgement from Maxim and public injunctive relief prohibiting Maxim from engaging in the unlawful, unfair, and/or fraudulent conduct alleged herein.

116.    Plaintiffs and members of the California Class seek all monetary and non-monetary relief allowed by law, including restitution of all profits stemming from Maxim's unfair, unlawful, and fraudulent business practices; declaratory relief; reasonable attorneys' fees and costs under California Code of Civil Procedure § 1021.5; injunctive relief; and other appropriate equitable relief.

## REQUEST FOR RELIEF

Plaintiffs, individually and on behalf of all others similarly situated, respectfully request that the Court enter judgment in their favor and against Maxim as follows:

A.    That the Court certify this action as a class action, proper and maintainable pursuant to Rule 23 of the Federal Rules of Civil Procedure; declare that each Plaintiff is a proper class representative, and appoint Plaintiffs' counsel as Class Counsel;

B.    That the Court award Plaintiffs and the Class or Subclass(es) compensatory, consequential, general, nominal, statutory, and punitive or exemplary damages (along with any other damages available at law) to the extent permitted by law and in an amount to be determined at trial;

C.    That the Court award to Plaintiffs the costs and disbursements of the action, along with reasonable attorneys' fees, costs, and expenses as provided by law;

D.    That the Court award pre-and post-judgment interest at the maximum legal rate;

E.      That the Court disgorge any unjust enrichment or revenue Maxim gained from its

unjust business practices, including the practice of making mid-contract take-it-or-leave-it

demands without fair and just compensation; and

F.      That the Court grant all such other relief as it deems just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiffs demand a jury trial on all claims so triable.

Dated: July 20, 2022                          Respectfully Submitted,

JOSEPH GREENWALD & LAAKE, P.A.

/s/ *Veronica B. Nannis*
Veronica B. Nannis (Md. Bar No. 15679)
6404 Ivy Lane, Ste. 400
Greenbelt, Maryland 20770-1417
Telephone: (240) 553-1209
Facsimile: (240) 553-1748
VNannis@JGLLAW.COM

George A. Hanson*
J. Austin Moore*
K. Ross Merrill*
*Pro hac vice applications forthcoming*
**STUEVE SIEGEL HANSON LLP**
460 Nichols Road, Suite 200
Kansas City, Missouri 64112
Telephone: (816) 714-7100
Facsimile: (816) 714-7101
hanson@stuevesiegel.com
moore@stuevesiegel.com
merrill@stuevesiegel.com