IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| CAROLYN MILLER, TEAYL MILLER, and JENNIFER REENTS, individually and on behalf of all others similarly situated, <br><br> *Plaintiffs*, <br><br> v. <br><br> MAXIM HEALTHCARE SERVICES, INC., <br><br> *Defendant*. | Case No. 1:22-cv-01782-JRR <br><br> Hon. Julie Rebecca Rubin |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION
TO COMPEL ARBITRATION AND DISMISS FOR IMPROPER VENUE**

Defendant Maxim Healthcare Services, Inc. ("Defendant") moves the Court to compel arbitration of the claims asserted in this matter by Plaintiffs Carolyn Miller, Teayl Miller, and Jennifer Reents (collectively, "Plaintiffs") and to dismiss this action under the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1, et seq., and Federal Rule of Civil Procedure 12(b)(3) because Plaintiffs' claims are subject to mandatory, binding arbitration pursuant to agreements that they each executed with their former employer, Maxim Healthcare Staffing Services, Inc. ("Maxim").[1]

**I.     INTRODUCTION**

Maxim is a healthcare staffing agency that connects medical professionals, including nurses, to employers in the healthcare industry. Plaintiffs each worked for Maxim as nurses at healthcare facilities in different locations. Each of the Plaintiffs agreed to be bound by a mandatory

---

[1] Plaintiffs have named the wrong corporate entity as the defendant in this matter. The appropriate named defendant in this matter would be Maxim Healthcare Staffing Services, Inc. Plaintiffs each worked for and executed arbitration agreements with Maxim Healthcare Staffing Services, Inc. (Ex. 1, Declaration of Nathalie Williams ("Williams Decl.") ¶¶ 2-10, Exs. A-C.) Maxim expressly reserves its ability to seek to correct this issue in future pleadings whether in this matter or in arbitration.

arbitration agreement with Maxim: the Mutual Agreement to Arbitrate Employment-Related Disputes ("MAA"). Under the MAA, Plaintiffs and Maxim are required to arbitrate most claims related to Plaintiffs' employment with Maxim, including the sorts of claims Plaintiffs assert in this case. Courts have compelled arbitration under virtually identical circumstances based on similar agreements executed by other Maxim employees across the nation.

For these reasons, and the reasons set forth more fully below, Defendant respectfully requests that the Court compel arbitration of Plaintiffs' claims in accordance with the parties' agreement and dismiss this case.

## II. RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

### A. Plaintiffs And Their Respective Agreements To Arbitrate.

When an individual, such as each of the Plaintiffs in this case, begins her employment relationship with Maxim, she is required to provide certain information through an electronic onboarding system called Onboarding365. (Williams Decl. ¶ 2.) Job applicants receive a link from Maxim to the Onboarding365 system at the email address that the applicant provides. (*Id.* ¶ 3.) Onboarding365 generates and provides each applicant with a password that can be used to access the onboarding system; only the applicant has access to her password. (*Id.*) Using her username and password, an applicant is able to complete an online profile in which she provides personal information, including her telephone number, home address, date of birth, Social Security number, driver's license number, education and employment history, professional licenses and certifications, and personal references. (*Id.* ¶¶ 4-5.) After an applicant completes her profile, she receives an electronic onboarding packet, which includes the MAA, via the Onboarding365 system. (*Id.* ¶¶ 6-7.)

This is the process that Plaintiffs in this case utilized at the outset of their respective employment relationships with Maxim. (*Id.* ¶ 6.) During that process, each Plaintiff reviewed and executed a series of onboarding documents relating to her employment with Maxim. (*Id.*) After reviewing each such document, each Plaintiff checked a box indicating "I have reviewed, and I accept the document above." (Williams Decl. ¶¶ 8-9.) After checking that box for each document, each Plaintiff also indicated her acknowledgement and acceptance of each document by selecting a separate "I Accept" prompt, which had the effect of affixing her electronic signature to the document in question. (*Id.*) One of the documents that each Plaintiff reviewed, acknowledged, accepted, and signed using this process was the MAA. (*Id.* ¶¶ 7-10, Exs. A-C.)

### B.     The Terms Of The Mutual Agreement To Arbitrate.

As detailed above, each of the three Plaintiffs executed an MAA at the outset of their respective employment relationships with Maxim. The versions of the MAA executed by each Plaintiff are substantively identical. (*See* Exs. A-C.)

The MAA expressly states that it is an agreement to arbitrate under the FAA. (Ex. A at 6; Ex. B at 6; Ex. C at 6.) The MAA further provides, in pertinent part:

> **Claims Covered by this Mutual Agreement to Arbitrate (Covered Claims)**
>
> In exchange for the mutual promises contained in this Agreement, and as a condition of Employee's employment with MAXIM, **EMPLOYEE and MAXIM agree to arbitrate before a neutral arbitrator exclusively on an individual basis (and not on a class, collective or representative basis)** any and all existing or future disputes, claims or complaints . . . that directly or indirectly arise out of or relate to EMPLOYEE's recruitment, application, employment or separation from employment with MAXIM.

(Ex. A at 1; Ex. B at 1; Ex. C at 1 (emphasis in originals).) The MAA also includes a non-exhaustive, non-exclusive list of types of "covered claims," including the following:

- "Claims for fraud, promissory estoppel, fraudulent inducement of contract or breach of contract or contractual obligation, whether such alleged contract or obligation be oral, written, or express or implied by fact or law";

3

- "Claims for wrongful termination of employment, violation of public policy and/or constructive discharge, infliction of emotional distress, misrepresentation, interference with contract or prospective economic advantage, defamation, unfair business practices, private injunctive relief, and any other tort or tort-like causes"; and

- "Claims for non-payment or incorrect payment of wages, inaccurate wage statements, compensation, premium pay, commissions, bonuses, expenses, severance, employee fringe benefits, stock options and the like, penalties, and restitution, whether such claims be pursuant to alleged express or implied contract or obligation, equity, and any federal, state, or local statutes, regulations or rules, ordinances or common law, concerning wages, hours, working conditions, compensation or employee benefits."

(Ex. A at 1-2; Ex. B at 1-2; Ex. C at 1-2.)

In addition, through the MAA, each Plaintiff expressly agreed to pursue only individual relief on any covered claims and not to seek relief through a class action, through a collective action, or in any other representative capacity. (Ex. A at 3-4; Ex. B at 3-4; Ex. C at 3-4.) Specifically, in a section with the bolded heading "**Class, collective or representative action waiver**," the MAA states as follows:

> EMPLOYEE and MAXIM expressly intend and agree that all Covered Claims under this Agreement to arbitrate must be brought in the parties' individual capacity, and not as a plaintiff or class representative or class member in any purported class action, collective or representative action proceeding. **No Covered Claims may be brought or maintained on a class, collective, or representative basis either in court or in arbitration. All Covered Claims will be decided on an individual basis in arbitration pursuant to this Agreement to arbitrate.** The parties expressly waive any right with respect to any Covered Claims to submit, initiate, or participate in a representative capacity or as a plaintiff, claimant or class representative or member in class action, collective action, or other representative or joint action, regardless of whether the action is filed in arbitration or in court . . . . Covered Claims may not be joined or consolidated in court or arbitration with Covered Claims brought by other individual(s), and no damages or penalties may be sought or recovered on behalf of other individuals, unless agreed to in writing by all parties.

(Ex. A at 3-4; Ex. B at 3-4; Ex. C at 3-4 (emphasis in originals).)

**C.  Plaintiffs' Claims Are Covered By Their Arbitration Agreements.**

On July 20, 2022, Plaintiffs initiated this action by filing a Complaint against Defendant in this Court. Plaintiffs' initial Complaint was subsequently superseded by an Amended Complaint

4

that Plaintiffs filed on July 29, 2022 (ECF No. 6, Am. Compl.). In their Amended Complaint, Plaintiffs assert class and collective action claims on behalf of themselves and a series of allegedly similarly situated individuals. (Am. Compl. ¶¶ 58-68.) Plaintiffs' claims include causes of action for breach of contract (Count 1), promissory estoppel (Count 2), unjust enrichment (Count 3), fraudulent inducement (Count 4), fraudulent concealment (Count 5), negligent misrepresentation (Count 6), alleged violations of the wage payment laws of 44 states (Count 7), alleged violations of California Labor Code Section 970 (Count 8), a violation of the California Unfair Competition Law (Count 9), unpaid overtime under the Fair Labor Standards Act ("FLSA") (Count 10), and alleged violations of the overtime laws of 31 states (Count 11). (Am. Compl. ¶¶ 69-152.) Each of Plaintiffs' claims relates to their allegations that Defendant: (i) engaged in "bait-and-switch" practices with regard to Plaintiffs' employment agreements and (ii) improperly calculated its employees' "regular rate" of pay and thereby underpaid Plaintiffs for overtime hours worked. (Am. Compl. ¶¶ 3-4.) As described above, the MAA expressly applies to and requires arbitration of all of Plaintiffs' causes of action. (*See supra* at 3-5 and *infra* at 8-9.)

### III.  LEGAL STANDARDS.

The Federal Arbitration Act, 9 U.S.C. §§ 1 et seq., establishes the validity and enforceability of written agreements to arbitrate disputes. Section 2 of the FAA provides that any written agreement to arbitrate "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Courts are required to compel arbitration when parties have entered into a valid and enforceable agreement to arbitrate and the dispute falls within the scope of the agreement. *See* 9 U.S.C. §§ 3-4; *Murray v. UFCW Int'l, Loc. 400*, 289 F.3d 297, 301 (4th Cir. 2002); *Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 500 (4th Cir. 2002). When deciding whether parties have entered into a valid and enforceable agreement to arbitrate, courts "apply ordinary state-law principles that govern the formation of

contracts." *Johnson v. Circuit City Stores*, 148 F.3d 373, 377 (4th Cir. 1998) (internal quotation marks and citation omitted).

In the Fourth Circuit and the District of Maryland, a motion to compel arbitration based on a binding arbitration agreement is best understood as a motion challenging the sufficiency of the plaintiff's choice of venue under Rule 12(b)(3). *Sucampo Pharms., Inc. v. Astellas Pharma, Inc.*, 471 F.3d 544, 550 (4th Cir. 2006); *see also, e.g.*, *Aggarao v. MOL Ship Mgmt. Co.*, 675 F.3d 355, 365 n.9 (4th Cir. 2012) (explaining that "the Supreme Court has characterized an arbitration clause as a specialized kind of forum-selection clause" and that "a motion to dismiss based on a forum-selection clause should be properly treated under Rule 12(b)(3)" (internal quotation marks and citations omitted)); *Campbell v. Comcast Cable Commc'ns Mgmt., LLC*, 2022 WL 4237109, at *3-7 (D. Md. Sept. 13, 2022) (granting motion to compel arbitration and to dismiss for improper venue); *Townsend v. Fleischmann's Vinegar*, 2021 WL 4124252, at *2 (D. Md. Sept. 9, 2021) ("A motion to dismiss based on an arbitration clause . . . should be construed . . . as a challenge to the sufficiency of the plaintiff's choice of venue under Rule 12(b)(3)."), *appeal denied*, 2021 WL 7968181 (4th Cir. Dec. 20, 2021). When faced with a Rule 12(b)(3) venue challenge, the plaintiff bears the burden of proving that venue is appropriate. *Stone v. Wells Fargo, N.A.*, 361 F. Supp. 3d 539, 548 (D. Md. 2019); *Townsend*, 2021 WL 4124252, at *2. In evaluating a motion to dismiss under Rule 12(b)(3), a court may freely "consider evidence outside the [pleadings]." *Aggarao*, 675 F.3d at 365-66; *see also, e.g.*, *Campbell*, 2022 WL 4237109, at *3-6 (considering supporting declaration and exhibits attached to motion to compel arbitration and to dismiss for improper venue).

IV. **ARGUMENT**

    A. **The Court Should Compel Arbitration Of Plaintiffs' Claims.**

In the Fourth Circuit, a court should compel arbitration where: (i) the parties have entered into a valid agreement to arbitrate and (ii) the dispute falls within the scope of the arbitration agreement. *E.g.*, *Murray*, 289 F.3d at 301; *Alamria v. Telcor Int'l, Inc.*, 920 F. Supp. 658, 662-63 (D. Md. 1996). Both elements of that analysis are satisfied here. *First*, the parties entered into valid arbitration agreements (i.e., the MAA). *Second*, the claims that Plaintiffs assert against Defendant in this case fall squarely within the scope of Plaintiffs' agreements. Courts have consistently compelled arbitration under Maxim's dispute resolution program in analogous circumstances; this case should be no different.

        1. **Plaintiffs And Maxim Are Parties To Valid And Enforceable Arbitration Agreements.**

Courts look to the relevant state law of contracts when determining whether parties entered into valid and enforceable agreements to arbitrate. *Hill v. Peoplesoft USA, Inc.*, 412 F.3d 540, 543 (4th Cir. 2005). In Maryland, an arbitration agreement must be a "valid contract" in order "to be binding and enforceable." *Id*. (citing *Cheek v. United Healthcare of Mid-Atl., Inc.*, 835 A.2d 656, 661 (Md. 2003)). The cornerstone of valid contract formation is mutual assent between the two parties. *Cochran v. Norkunas*, 919 A.2d 700, 708 (Md. 2007). The agreement must also "be supported by consideration." *Hill*, 412 F.3d at 543 (citation omitted). These requirements are plainly satisfied here.

Plaintiffs and Maxim mutually assented through the MAA that individual arbitration would become the exclusive method for resolving most employment-related disputes between them. (*Supra* at 3-4.) Each Plaintiff affirmatively indicated that, as part of the onboarding process for her position with Maxim, she had reviewed and was assenting to the terms of the MAA. (*Supra* at 3.)

7

Each Plaintiff executed the MAA. (Ex. A at 7; Ex. B at 7; Ex. C at 7.) Maxim counter-executed each agreement. (Ex. A at 7; Ex. B at 7; Ex. C at 7.) On the signature page of the MAA, each Plaintiff expressly indicated that she had carefully read and understood the terms of the agreement, that she was entering into the agreement voluntarily, and that she had been given the opportunity to discuss the agreement with private legal counsel if she chose to do so. (Ex. A at 7; Ex. B at 7; Ex. C at 7.)

The MAA is supported by adequate consideration because, per the clear terms of the MAA, each Plaintiff and Maxim are mutually obligated to arbitrate any disputes covered by the Program. *See Cheek*, 835 A.2d at 665 ("[M]utual promises to arbitrate act as 'an independently enforceable contract' . . . [i.e.], each party has promised to arbitrate disputes arising from an underlying contract, and 'each promise provides consideration for the other.'" (quoting *Holmes v. Coverall N. Am.*, 649 A.2d 365, 370 (Md. 1994))); *see also, e.g.*, *Dieng v. Coll. Park Hyundai*, 2009 WL 2096076, at *4 (D. Md. July 9, 2009) ("[T]he agreement to be bound by arbitration was a mutual one and constitutes sufficient consideration for this arbitration agreement."); *accord O'Neil v. Hilton Head Hosp.*, 115 F.3d 272, 275 (4th Cir. 1997) ("A mutual promise to arbitrate constitutes sufficient consideration for [an] arbitration agreement."). The mutuality of the contractual promises reflected in each Plaintiff's agreement further supports the enforceability of the MAA.

In sum, the MAA is a valid and enforceable contract supported by adequate consideration, and there is no dispute that each Plaintiff and Maxim agreed to be bound by the contractual terms of the MAA.

### 2. The Scope Of Plaintiffs' Agreements Cover Their Claims.

Because each Plaintiff is party to a valid arbitration agreement with Maxim, the only remaining question is whether the claims that Plaintiffs assert in this case are covered by their agreements to arbitrate. They are.

The scope of claims covered by each Plaintiff's arbitration agreement is clear: the MAA explicitly requires mandatory arbitration of most employment-related disputes, including all claims "that directly or indirectly arise out of or relate to" each Plaintiff's "recruitment, application, employment or separation from employment with Maxim." (Ex. A at 1; Ex. B at 1; Ex. C at 1.) That express language is sufficient standing alone to cover each of the claims that Plaintiffs assert in this case. But the MAA goes further by providing a non-exhaustive list of the types of claims that are covered by the MAA (*supra* at 3-4; Ex. A at 1-2; Ex. B at 1-2; Ex. C at 1-2), and each of Plaintiffs' claims falls under at least one of those non-exclusive examples. Because Plaintiffs' claims are within the scope of their respective agreements to arbitrate under the MAA, those claims must be resolved through binding arbitration and not through litigation in this Court.

### 3. Each Plaintiff Agreed To Arbitrate Her Claims Individually.

Under the clear terms of the MAA, each Plaintiff agreed to arbitrate her claims against Maxim in individual arbitration, not in a class or collective action proceeding. (*Supra* at 4; Ex. A at 3-4; Ex. B at 3-4; Ex. C at 3-4.) Specifically, each Plaintiff agreed to waive her ability to assert any covered claims against Maxim in a class, collective, or representative action. (Ex. A at 3-4; Ex. B at 3-4; Ex. C at 3-4.) In a section of the MAA titled "Class, collective, or representative action waiver," the MAA provides in bolded font that "**No Covered Claims may be brought or maintained on a class, collective, or representative basis either in court or in arbitration. All Covered Claims will be decided on an individual basis in arbitration pursuant to this Agreement to arbitrate.**" (Ex. A at 3; Ex. B at 3; Ex. C at 3.) Each Plaintiff agreed to be bound by these clear terms of the MAA.

The FAA "requires courts rigorously to enforce arbitration agreements according to their terms, including terms that specify . . . *the rules* under which that arbitration will be conducted" such as terms requiring individual arbitration and prohibiting class or collective action

9

proceedings. *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1621 (2018) (quotation marks and citation omitted). Here, Plaintiffs unequivocally agreed to pursue any covered claims in individual arbitration and not in a class or collective action proceeding. The Court should hold Plaintiffs to their contractual obligations in that regard.

### 4. Courts Nationwide Have Enforced Similar Agreements.

Courts across the country have enforced similar arbitration agreements executed between Maxim and its employees. The following represents a non-exhaustive list of such decisions: *Crews v. Maxim Healthcare Servs., Inc.*, 2021 WL 2417732 (W.D. Tenn. June 14, 2021); *Benson v. Maxim Healthcare Servs., Inc.*, 2018 WL 5829312 (E.D. Cal. Nov. 7, 2018); *Marchant v. Maxim Healthcare Servs., Inc.*, No. 2:18-CV-2757-RMG, Dkt. 7, Order and Opinion (D.S.C. Nov. 5, 2018); *Hammer v. Maxim Healthcare Servs., Inc.*, No. 8:16-CV-3533-EAK-AAS, Dkt. 22, Order (M.D. Fla. Mar. 15, 2017); *Heaton v. Maxim Healthcare Servs., Inc.*, No. 19STCV02079 (Cal. Super. Ct. Aug. 2, 2019); *Mirza v. Maxim Healthcare Servs., Inc.*, No. 18STCV10158 (Cal. Super. Ct. May 29, 2019); *Hyman v. Maxim Healthcare Servs., Inc.*, No. BC713955 (Cal. Super. Ct. Jan. 23, 2019).[2]

This Court should reach the same conclusion as the courts in these cases and require Plaintiffs to follow their MAAs and arbitrate their claims.

### B. The Court Should Dismiss This Action.

Although the FAA generally provides that a case may be stayed after referral to arbitration, *see* 9 U.S.C. § 3, the Fourth Circuit has made clear that dismissal, rather than a stay, "is a proper remedy when all of the issues presented in a lawsuit are arbitrable." *Choice Hotels Int'l, Inc. v.*

---

[2] Copies of the referenced decisions issued by the U.S. District Courts for the District of South Carolina and the Middle District of Florida, as well as from the Superior Court of California, are submitted herewith as Exhibits 2-6.

*BSR Tropicana Resort, Inc.*, 252 F.3d 707, 709-10 (4th Cir. 2001); *see also Greenville Hosp. Sys. v. Emp. Welfare Benefit Plan*, 628 F. App'x 842, 845-46 (4th Cir. 2015) (reaching the same conclusion); *Campbell*, 2022 WL 4237109, at *7 (same). Here, because all of Plaintiffs' claims are subject to binding arbitration under the terms of their respective agreements with Maxim, the Court should dismiss this action after it compels arbitration of the claims.

### V.      CONCLUSION

Through their assent to their MAAs, Plaintiffs agreed to submit to arbitration their employment-related claims, including the specific types of claims that they assert in this case. The Court should therefore: (i) grant Defendant's Motion and compel arbitration of each of the claims that Plaintiffs assert in their First Amended Complaint; and (ii) dismiss this case or, alternatively, stay the case pending resolution of the parties' dispute in arbitration.

Dated: September 16, 2022                   Respectfully submitted,

*/s/ Lincoln O. Bisbee*
Lincoln O. Bisbee (D. Md. Bar No. 28953)
Stephen K. Dixon (D. Md. Bar No. 22022)
Morgan, Lewis & Bockius LLP
1111 Pennsylvania Avenue, NW
Washington, DC 20004
Tel.: 202.739.3000
Fax: 202.739.3001
lincoln.bisbee@morganlewis.com
stephen.dixon@morganlewis.com

*Counsel for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that on September 16, 2022, I caused a true and correct copy of the foregoing to be filed via this Court's CM/ECF system, which will generate a Notice of Electronic Filing to all counsel of record.

*/s/ Lincoln O. Bisbee*
Lincoln O. Bisbee