# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **CAROLYN MILLER, *et al.*** | |
| **Plaintiffs,** | |
| **v.** | **Civil No. 1:22-cv-01782-JRR** |
| **MAXIM HEALTHCARE SERVICES, INC.** | |
| **Defendant.** | |

## MEMORANDUM OPINION

This matter comes before the court on Defendant Maxim Healthcare Services, Inc.'s Motion to Compel Arbitration and Motion to Dismiss for Improper Venue.  (ECF No. 20; "the Motion.")  The parties' submissions have been reviewed and no hearing is necessary.  Local Rule 105.6 (D. Md. 2021).  For the reasons set forth herein, Defendant's Motion will be granted.

## BACKGROUND[1]

Defendant Maxim Healthcare Services, Inc. ("Maxim"), is a Maryland corporation with its principal place of business in Howard County, Maryland.  (ECF No. 6 ¶ 8.)  Maxim is a healthcare staffing agency that works to create career opportunities for medical professionals, including nurses and travel nurses.  *Id.* ¶ 13.  Plaintiffs are travel nurses and worked for Maxim at different healthcare facilities.  *Id.* ¶¶ 5-7.  Plaintiff Carolyn Miller is a resident of Wisconsin who accepted a travel assignment from Maxim at Froedtert Hospital in Milwaukee, Wisconsin.  *Id.* ¶¶ 5, 18.

---

[1] The facts discussed in the Background section are construed in the light most favorable to Plaintiffs for purposes of ruling on a motion to dismiss under Rule 12(b)(3).  *Aggarao v. MOL Ship Mgmt. Co., Ltd.*, 675 F.3d 355, 366 (4th Cir. 2012). Further, as discussed in the Legal Standards Section, "[o]n a motion to dismiss under Rule 12(b)(3), the court is permitted to consider evidence outside the pleadings."  *Id.* at 365-66.  Here, the court considers the exhibits submitted by the parties, including the Mutual Agreements to Arbitrate Employment-Related Disputes (ECF Nos. 20-3, 20-4, 20-5); Declaration of Nathalie Williams (ECF No. 20-2); Declaration of Carolyn Miller (ECF No. 26-1); Declaration of Teayl Miller (ECF No. 26-2); and Declaration of Jennifer Reents (ECF No. 26-3.)

Plaintiff Teayl Miller is a resident of Wisconsin who accepted a travel assignment from Maxim at CHI Immanuel Hospital in Omaha, Nebraska. *Id.* ¶¶ 6, 25. Plaintiff Jennifer Reents is a resident of Texas who accepted a travel assignment from Maxim at Dignity Health-Mercy Medical Center in Merced, California. *Id.* ¶¶ 7, 31.

Maxim offered each Plaintiff an employment agreement with a fixed-term assignment at an agreed-upon pay rate. (ECF No. 6 ¶¶ 2, 17-18, 24-25, 30-31.) Plaintiffs accepted the employment agreement by executing Maxim's form travel assignment. *Id.* ¶¶ 19, 26, 32. After entering their respective employment agreements with Maxim, Plaintiffs provided information to Maxim through an electronic onboarding system called Onboarding365. (ECF No. 20-2; Williams Declaration.) Subsequently, Plaintiffs received an electronic onboarding packet which included a Mutual Agreement to Arbitrate Employment-Related Disputes ("MAA"). *Id.* The MAA section titled "Intent of the Agreement" provides:

> MAXIM believes that if a dispute, claim, complaint, or controversy (a "Dispute") related to EMPLOYEE's recruitment, application, employment, or separation from employment with MAXIM, exists or arises, it is in the best interest of the Parties to resolve the Dispute without litigation. Most Disputes can be resolved internally through MAXIM's grievance and complaint processes. When such Disputes are not resolved internally, however, EMPLOYEE and MAXIM agree to resolve Disputes involving Covered Claims (defined below) through final and binding arbitration as described below. EMPLOYEE and MAXIM understand that by entering into this Agreement they are giving up the right to have any Covered Claims decided by a judge or jury.

(ECF No. 20-3 at 1.)

Plaintiffs allege that after they accepted their positions, Maxim made a "take-it-or-leave-it" demand, which required Plaintiffs to accept less pay or be terminated. (ECF No. 6 ¶¶ 2, 20, 27, 33.) Plaintiffs continued working in their positions at the lower rate because there was no reasonable alternative for employment after incurring travel expenses and obtaining short-term

housing. *Id.* ¶¶ 22, 28, 34.  Plaintiffs filed the instant lawsuit seeking to recover "for the pay losses Plaintiffs and other travelers experienced as a result of Maxim's predatory business practices." *Id.* ¶ 3.

On July 20, 2022, Plaintiffs filed a class action lawsuit.  (ECF No. 1.)  On July 29, 2022, Plaintiffs filed an Amended Complaint.  (ECF No. 6.)  The Amended Complaint sets forth eleven counts: (I) Breach of Contract; (II) Promissory Estoppel; (III) Unjust Enrichment; (IV) Fraudulent Inducement; (V) Fraudulent Concealment; (VI) Negligent Misrepresentation; (VII) Violation of State Wage Payment Laws; (VIII) Violation of California Labor Code § 970; (IX) Violation of the California Unfair Competition Law Cal. Bus. & Prof. Code § 17200; (X) Unpaid Overtime Under FLSA[2]; and (XI) Violation of State Overtime Statutes.  (ECF No. 6 at 17-31.)

Maxim moves to compel arbitration and dismiss for improper venue pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1 *et seq.,* and Federal Rule of Civil Procedure 12(b)(3). (ECF No. 20-1 at 5-6.)  Maxim argues that the court should compel arbitration because the parties entered into valid binding arbitration agreements and Plaintiffs' claims fall within the scope of the arbitration agreements. *Id.* at 7.

## LEGAL STANDARDS

### Federal Arbitration Act, 9 U.S.C. §§ 1, et seq.

Maxim argues that the court should compel arbitration pursuant to the FAA.  (ECF No. 20-1 at 7.)  Section 2 of the FAA provides:

> A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid,

---

[2] Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.*

> irrevocable, and enforceable, save upon such grounds as exist at law
> or in equity for the revocation of any contract or as otherwise
> provided in chapter 4 [9 USCS §§ 401 *et seq.*].

9 U.S.C. § 2.  Sections 3 and 4 of the FAA "provide[] two parallel devices for enforcing an arbitration agreement: a stay of litigation in any case raising a dispute referable to arbitration, 9 U.S.C. § 3, and an affirmative order to engage in arbitration, § 4." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 22 (1983).  Additionally, Section 4 of the FAA "reserves for trial the question of whether an arbitration agreement has been made, provided that a question of fact as to that issue is properly generated." *Stone v. Wells Fargo Bank, N.A.*, 361 F. Supp. 3d 539, 548 (D. Md. 2019); *see* 9 U.S.C. § 4 ("If the making of the arbitration agreement . . . be in issue, the court shall proceed summarily to the trial thereof").  "In order to generate an issue for resolution by a factfinder, the party opposing arbitration must make 'an unequivocal denial that the agreement [to arbitrate] had been made,' and must produce 'some evidence . . . to substantiate the denial.'" *Stone*, 361 F. Supp. 3d at 548 (quoting *Drews Distributing, Inc. v. Silicon Gaming, Inc.*, 245 F.3d 347, 352 n.3 (4th Cir. 2001)).

Accordingly, "when parties have entered into a valid and enforceable agreement to arbitrate their disputes and the dispute at issue falls within the scope of that agreement, the FAA requires federal courts to stay judicial proceedings, and compel arbitration in accordance with the agreement's terms." *Murray v. UFCW Int'l, Local 400*, 289 F.3d 297, 301 (4th Cir. 2002) (citing 9 U.S.C. §§ 3, 4).  "Notwithstanding the terms of 9 U.S.C. § 3, some courts have ruled that, in lieu of a stay, 'dismissal is a proper remedy when all of the issues presented in a lawsuit are arbitrable.'" *Stone*, 361 F. Supp. 3d at 547 (quoting *Choice Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc.*, 252 F.3d 707, 709-10 (4th Cir. 2001)).

**Federal Rule of Civil Procedure 12(b)(3)**

Maxim moves to dismiss the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(3).  "This Court has considered motions to dismiss in favor of arbitration under Rules 12(b)(1), (3), and (6)."  *Willcock v. My Goodness! Games, Inc.*, No. PWG-16-4020, 2018 U.S. Dist. LEXIS 140708, at *7-8 (D. Md. Aug. 20, 2018).  In *Scherk v. Alberto-Culver Co.*, the Supreme Court recognized that "[a]n agreement to arbitrate before a specified tribunal is, in effect, a specialized kind of forum-selection clause that posits not only the situs of suit but also the procedure to be used in resolving the dispute."  417 U.S. 506, 519 (1974).

Consistent with Supreme Court precedent, in *Sucampo Pharms., Inc. v. Astellas Pharma, Inc.*, the Fourth Circuit held that "a motion to dismiss based on a forum-selection clause should be properly treated under Rule 12(b)(3) as a motion to dismiss on the basis of improper venue."  471 F.3d 544, 550 (4th Cir. 2006).  "Since *Sucampo*, the Fourth Circuit has reiterated that a challenge based on a forum-selection clause, including an arbitration clause, should be addressed by way of a motion to dismiss for improper venue under Rule 12(b)(3)."  *Stone*, 361 F. Supp. 3d at 548 (citing *Aggarao v. MOL Ship Mgmt. Co., Ltd.*, 675 F.3d 355, 365 n.9 (4th Cir. 2012)); *see Campbell v. Comcast Cable Commc'ns Mgmt. LLC*, No. CCB-21-2000, 2022 U.S. Dist. LEXIS 165857, at *6 (D. Md. Sept. 13, 2022) (concluding that a "motion to compel arbitration before the court may be properly treated as a motion to dismiss for improper venue under Rule 12(b)(3)"); *Enter. Info. Mgmt. v. Superletter.com, Inc.*, No. DKC-13-2131, 2013 U.S. Dist. LEXIS 160536, at *10 (D. Md. Nov. 7, 2013) (same).   Accordingly, the court will treat the Motion pursuant to Rule 12(b)(3).

Pursuant to Rule 12(b)(3), Defendant "may challenge the sufficiency of [Plaintiffs'] choice of venue."  *Stone*, 361 F. Supp. 3d at 549.  "In the Fourth Circuit, when a challenge to venue is raised, the plaintiff bears the burden of demonstrating that venue is appropriate."  *Id.*  "[U]nder

Rule 12(b)(3), 'a court is free to look at matters outside of the pleadings, however, the court still must draw all reasonable inferences in the light most favorable to the 'nonmoving party." *In re Titanium Dioxide Antitrust Litig.*, 962 F. Supp. 3d 840, 857 (D. Md. 2013) (quoting *Costar Realty Info., Inc. v. Field*, 612 F. Supp. 2d 660, 672 (D. Md. 2009)).  Here, as set forth at n.1, *supra*, the court considers the exhibits submitted by the parties, including the Mutual Agreements to Arbitrate Employment-Related Disputes (ECF Nos. 20-3, 20-4, 20-5); Declaration of Nathalie Williams (ECF No. 20-2); Declaration of Carolyn Miller (ECF No. 26-1); Declaration of Teayl Miller (ECF No. 26-2); and Declaration of Jennifer Reents (ECF No. 26-3.)

## ANALYSIS

"A district court . . . has no choice but to grant a motion to compel arbitration where a valid arbitration agreement exists and the issues in a case fall within its purview."  *Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 500 (4th Cir. 2002).  "Accordingly, a court must 'engage in a limited review to ensure that the dispute is arbitrable—*i.e.*, that a valid agreement exists between the parties and that the specific dispute falls within the substantive scope of that agreement.'"  *Stone*, 361 F. Supp. 3d at 547 (quoting *Murray v. UFCW Int'l, Local 400*, 289 F.3d 297, 302 (4th Cir. 2002)); *see Chorley Enters. v. Dickey's Barbecue Rests., Inc.*, 807 F.3d 553, 563 (4th Cir. 2015) (explaining that under Section 4 of the FAA, the court will compel arbitration if: "(i) the parties have entered into a valid agreement to arbitrate, and (ii) the dispute in question falls within the scope of the arbitration agreement").

I.      **Arbitration Agreement**

   A.      **Existence of a Valid Agreement to Arbitrate**

   Maxim argues that Plaintiffs and Maxim are parties to a valid and enforceable arbitration agreement.  (ECF No. 20-1 at 7.)  Plaintiffs do not dispute that they signed the MAA but argue that Maxim fraudulently induced them into entering the agreement.  (ECF No. 26 at 10.)

   In order to compel arbitration, the court must "determine whether the particular dispute at issue is one to be resolved through arbitration."  *Murray v. UFCW Int'l, Local 400*, 289 F.3d 297, 302 (4th Cir. 2002).  To determine whether the parties agreed to arbitrate a certain matter, the court applies "ordinary state-law principles that govern the formation of contracts."  *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995).  "Under Maryland law, to be binding and enforceable, an arbitration agreement must be a valid contract."  *Hill v. PeopleSoft USA, Inc.*, 412 F.3d 540, 543 (4th Cir. 2005).  A contract is formed with "mutual assent (offer and acceptance), an agreement definite in its terms, and sufficient consideration."  *CTI/DC, Inc. v. Selective Ins. Co. of Am.*, 392 F. 3d 114, 123 (4th Cir. 2004).  "Manifestation of mutual assent includes two issues: (1) intent to be bound, and (2) definiteness of terms."  *Cochran v. Norkunas*, 398 Md. 1, 14 (2007).

   Despite signing the MAA, Plaintiffs argue that "where, as here, a party has alleged fraudulent inducement of the agreement to arbitrate and of any rules that incorporate a delegation provision, the Court must consider those challenges before enforcing the purported contract." (ECF No. 26 at 10.)  In *Prima Paint v. Flood Conklin Mfg. Co.*, the issue before the Supreme Court was "whether a claim of fraud in the inducement of the entire contract is to be resolved by the federal court, or whether the matter is to be referred to the arbitrators."  388 U.S. 395, 402 (1967). The Court explained:

> Under § 4, with respect to a matter within the jurisdiction of the
> federal courts save for the existence of an arbitration clause, the

> federal court is instructed to order arbitration to proceed once it is
> satisfied that "the making of the agreement for arbitration or the
> failure to comply [with the arbitration agreement] is not in issue."
> Accordingly, if the claim is fraud in the inducement of the
> arbitration clause itself -- an issue which goes to the "making" of the
> agreement to arbitrate -- the federal court may proceed to adjudicate
> it. But the statutory language does not permit the federal court to
> consider claims of fraud in the inducement of the contract generally.

*Id.* at 403-404.   The Court found that there was no claim advanced by the plaintiff that the

defendant "fraudulently induced it to enter into the agreement to arbitrate 'any controversy or

claim arising out of or relating to this Agreement, or the breach thereof'" and further, the

contractual language was "broad enough to encompass [the plaintiff's] claim that both execution

and acceleration of the consulting agreement itself were procured by fraud."   *Id.* at 406.

Accordingly, the Court affirmed the defendant's motion to stay pending arbitration.   *Id.* at 407.

Campaniello Imports, Ltd v. Saporiti Italia S.p.A.* is also instructive on the precise issue

involving fraudulent inducement.   117 F.3d 655 (2d Cir. 1997).   In *Campaniello*, the plaintiffs did

not dispute that they were party to a contract containing an arbitration clause, but argued "that they

have properly alleged a claim of fraud in the inducement of the arbitration clause that may be

adjudicated by the court."   117 F.3d at 666.   The district court ordered arbitration to proceed

because "the complaint did 'not demonstrate that the claims of fraudulent inducement and

misrepresentation relate only to the arbitration clause, as opposed to the entire agreement.'"   *Id.*

(quoting *Campaniello Imports, Ltd. v. Saporiti Italia S.p.A.*, No. 95 civ. 7685, 1996 WL 437907,

at *9 (S.D.N.Y. Aug. 2, 1996)).   The Second Circuit affirmed the district court and found that there

was no indication of fraud or misrepresentation related to the arbitration clause:

> Appellants have only claimed that the alleged misrepresentations
> and omissions fraudulently induced them to enter into a settlement.
> They have not suggested that they were in any way misled as to the
> import or content of the arbitration clause; in fact, the arbitration
> clause was specifically amended as a result of arms-length

negotiations. Appellants may not now establish a connection between the alleged fraud and the arbitration clause in particular merely by adding the allegation that the arbitration clause was a part of the overall scheme to defraud.

*Campaniello*, 117 F.3d at 668.

The *Campaniello* court correctly noted that the distinction between fraudulent inducement of the arbitration clause versus fraudulent inducement of the contract at large "would be eviscerated if a claimant could transform a general fraud claim into fraud in the inducement of the arbitration clause merely by stating that the arbitration clause is an element of the scheme to defraud." 117 F.3d at 667 (drawing upon the distinction as set forth in *Prima Paint*). Further, "in every instance where there is a fraud going to the contract generally and an allegation that the arbitration clause was 'part of the scheme to defraud,' the court would have to adjudicate the entire scheme to defraud." *Id.* "Consequently, there would never be an instance where a claim of fraud going to a contract generally would be sent to arbitration by a federal court." *Id.*

The law is clear that Plaintiffs must "specifically assert they were fraudulently induced to enter into the arbitration provisions contained therein" in order to avoid an arbitration tribunal. *Senior Mgmt., Inc.*, 240 Fed. Appx. at 553 (reversing the lower court's denial of defendant's motion to compel and finding that while the plaintiffs asserted "they were fraudulently induced by [the defendants] to enter the agreements," the plaintiffs did "not specifically assert they were fraudulently induced to enter into the arbitration provisions contained therein"); *Sydnor v. Conseco Fin. Servicing Corp.*, 252 F.3d 302, 307 (4th Cir. 2001) (remanding to the district court because "it is unclear from the record how appellees' allegations of fraud apply specifically to the making of the arbitration agreement, as opposed to the whole contract" and finding that "if the appellees' fraud claims apply to the contract as a whole, they must be resolved by an arbitrator, and not the court"); *Campaniello*, 117 F.3d at 667 (finding "that there must be some substantial relationship

between the fraud or misrepresentation and the arbitration clause in particular in order to protect the obvious distinction drawn in *Prima Paint* between the arbitrability of fraud relating to a contract generally and fraud in the inducement of the arbitration clause in particular"); *Neville v. Terminix Int'l Co. L.P.*, No. PJM-06-467, 2006 U.S. Dist. LEXIS 105239, at *11 (D. Md. July 28, 2006) (finding that the plaintiff's claim for duress was directed towards "the contract as a whole" when the plaintiff gave "shifting references to 'the Agreements' and 'the Arbitration Agreement,'" and failed "to allege any coercive conduct by [the defendant] specific to the arbitration clause of the Employment Agreement or the Arbitration Agreement").

Therefore, the court must determine whether the hallmark or thrust of Plaintiffs' claims and allegations is that Defendant fraudulently induced them into entering the MAA as a discrete feature of their employment contracts or rather that Defendant induced them to enter their employment contracts of which the MAA is a component.  Plaintiffs allege:

> Maxim made material representations of fact to Plaintiffs and class members about their pay rates and total compensation that were false or misleading.
>
> . . .
>
> At the time it made such representations, Maxim knew that its representations were false and it would pay Plaintiffs and class members less than the amounts it promised if it so determined.
>
> . . .
>
> Maxim's misrepresentations were made with the purpose to defraud Plaintiffs and class members.
>
> . . .
>
> At the time it made such representations, Maxim knew Plaintiffs and class members would justifiably rely on its representations in entering into their travel assignment agreements, relocating, and incurring certain expenses, costs, and losses.
>
> . . .
>
> Maxim had a duty to disclose its representations were false or misleading because Maxim had superior knowledge that was not

reasonably available to Plaintiffs and class members, Plaintiffs and class members were entitled to know given the relation of trust and confidence between them, and disclosure was necessary to prevent Plaintiffs and class members from being misled or mistaken.

. . .

Plaintiffs and class members did not know Maxim's representations regarding their pay rate were false or misleading and had a right to rely on and reasonably relied on them in entering into travel assignment agreements, relocating, and incurring certain expenses, costs, and losses.

. . .

As a result of Maxim's fraudulent inducement, Plaintiffs and class members sustained damages as described herein.

. . .

Maxim's false or misleading representations were reprehensible and Maxim should be subject to punitive damages, in that they were made in bad faith, premeditated, and done with actual malice.

(ECF No. 6 ¶¶ 94-101.)

Plaintiffs' fraudulent inducement claim targets the employment contract as a whole; Plaintiffs' claim is not that Maxim fraudulently induced them into agreeing to arbitrate. While Plaintiffs' Declarations aver that they "would not have accepted an assignment through Maxim or completed the arbitration agreement or its delegation provision," Plaintiffs' fraud allegations do not single out the MAA as their target, but rather Maxim's employment contract of which the MAA is a part. (ECF Nos. 26-1, 26-2, 26-3.)

### B.    Claims Covered by Arbitration Provision

The court must also consider whether "the dispute in question falls within the scope of the arbitration agreement." *Chorley Enters. v. Dickey's Barbecue Rests., Inc.*, 807 F.3d 553, 563 (4th Cir. 2015). "'Whether a party has agreed to arbitrate an issue is a matter of contract interpretation: A party cannot be required to submit to arbitration any dispute which he has not agreed so to

submit.'" *Levin v. Alms & Assocs., Inc.*, 634 F.3d 260, 266 (4th Cir. 2011) (quoting *Am. Recovery Corp. v. Computerized Thermal Imaging*, 96 F.3d 88, 91 (4th Cir. 1996)).

Defendant argues, and Plaintiffs do not dispute, that Plaintiffs' claims are covered by their agreements to arbitrate.  (ECF No. 20-1 at 8.)  The MAA provides:

> In exchange for the mutual promises contained in this Agreement, and as a condition of Employee's employment with MAXIM, EMPLOYEE and MAXIM agree to arbitrate before a neutral arbitrator exclusively on an individual basis (and not on a class, collective, or representative basis) any and all existing or future disputes, claims, or complaints ("Claims"), except those Claims not covered by this Agreement as described in Section III below, involving MAXIM and/or any of its former, current, and future officers, directors, employees, and/or agents that directly or indirectly arise out of or relate to EMPLOYEE's recruitment, application, employment or separation from employment with MAXIM (collectively "Covered Claims"). Covered Claims include disputes or claims that EMPLOYEE has involving MAXIM's current or former employees, officers, directors and/or agents. Additionally, Covered Claims include, but are not limited to:
>
> > Claims for fraud, promissory estoppel, fraudulent inducement of contract or breach of contract or contractual obligation, whether such alleged contract or obligation be oral, written, or express or implied by fact or law
> >
> > Claims for wrongful termination of employment, violation of public policy and/or constructive discharge, infliction of emotional distress, misrepresentation, interference with contract or prospective economic advantage, defamation, unfair business practices, private injunctive relief, and any other tort or tort-like causes of action relating to or arising from the employment relationship or the formation or termination thereof;
> >
> > Claims for discrimination, harassment or retaliation, whether on the basis of age, gender, sex, race, national origin, religion, disability or any other unlawful basis, under any and all federal, state, or local statutes, regulations or rules, ordinances or common law . . .
> >
> > Claims for non-payment or incorrect payment of wages, inaccurate wage statements, compensation, premium pay,

> commissions, bonuses, expenses, severance, employee
> fringe benefits, stock options and the like, penalties, and
> restitution, whether such claims be pursuant to alleged
> express or implied contract or obligation, equity, and any
> federal, state, or local statutes, regulations or rules,
> ordinances or common law, concerning wages, hours,
> working conditions, compensation or employee benefits.

(ECF Nos. 20-3; 20-4; 20-5.)  Plaintiffs' claims are all employment-related disputes, including claims that "directly or indirectly arise out of or relate to [Plaintiffs'] recruitment, application, employment, or separation from employment with [Defendant]."  (ECF No. 20-3.)

The court finds the parties entered into a valid agreement to arbitrate and Plaintiffs' claims fall within its scope.   Accordingly, Plaintiffs' claims must be resolved through arbitration

## II.   <u>Jury Trial</u>

"[I]n the event the Court declines to outright deny" the Motion, Plaintiffs "request limited arbitration-related discovery, and if necessary, a jury trial on the issue of whether the 'agreement' to arbitrate is enforceable as required by the FAA."  (ECF No. 26 at 10, 20.)  In support, Plaintiffs rely on *Chorley Enterp., Inc. v. Dickey's Barbecue Rest., Inc.*, 807 F.3d 553 (4th Cir. 2015), and *Whitten v. Apria Healthcare Group, Inc.*, 2015 U.S. Dist. LEXIS 61060, No. PWG-14-CV-3193 (D. Md. May 11, 2015).

In *Chorley*, the Fourth Circuit vacated the district court's order to conduct a jury trial on the meaning of agreements to arbitrate and further addressed the right to a jury trial under Section 4 of the FAA:

> The district court concluded that Section 4 of the FAA requires a
> jury trial whenever the parties present conflicting interpretations of
> an agreement. The right to a jury trial under Section 4 of the FAA,
> however, is not automatic. Rather, the party seeking a jury trial must
> make an unequivocal denial that an arbitration agreement exists —
> and must also show sufficient facts in support.

> Not just any factual dispute will do. Rather, the party requesting a jury trial under Section 4 must provide sufficient evidence in support of its claims such that a reasonable jury could return a favorable verdict under applicable law. This standard is akin to the burden on summary judgment. In other words, to obtain a jury trial, the parties must show genuine issues of material fact regarding the existence of an agreement to arbitrate.

807 F.3d at 564-65 (internal citations omitted).  The *Chorley* court found that the plaintiffs did not raise a dispute of material fact; rather, the parties merely offered conflicting interpretations of the relevant agreements.  *Id.*  Accordingly, the Fourth Circuit concluded that the plaintiffs were not entitled to a jury trial under Section 4 of the FAA and instead determined "whether the parties intended to arbitrate their disputes as a matter of law based on the plain language of the agreements." *Id.* at 565.

In *Whitten*, the plaintiff challenged the existence and validity of the arbitration agreement between the parties.  2015 U.S. Dist. LEXIS 61060, at *4.  The plaintiff in *Whitten* argued that she never entered into the arbitration agreement and questioned its authenticity.  *Id.* at *8.  The court found that the plaintiff's acceptance of the arbitration agreement was a material fact.  *Id.* at *10. As a result, the court held that a genuine dispute existed as to the plaintiff's acceptance of the arbitration agreement and, accordingly, the court denied the motion to compel arbitration and allowed the case to "proceed with discovery on the validity of the Arbitration Agreement." *Id.* at *11.

Here, Plaintiffs "unequivocally deny that their consent to the [MAA's] was validly obtained;" however, in contrast to the plaintiff in *Whitten*, Plaintiffs do not dispute that the MAA exists.  Plaintiffs do not generate "genuine issues of material fact regarding the existence of an agreement to arbitrate."  *See Chorley* and *Whitten*, *supra*.  Accordingly, Plaintiffs are not entitled to a jury trial under Section 4 of the FAA.

14

**III.**     **The Remedy**

Defendant argues that the court should compel arbitration and dismiss this action.  (ECF No. 20-1 at 10.)   "Ordinarily, the 'proper course of action when a party seeks to invoke an arbitration clause is to stay the proceedings pending arbitration,' under Section 3 of the FAA 'rather than to dismiss outright.'"  *Stone v. Wells Fargo Bank, N.A.*, 361 F. Supp. 3d 539, 557 (D. Md. 2019) (quoting *Aggarao*, 675 F.3d at 376 n.18).  "However, Fourth Circuit case law indicates that dismissal, rather than a stay, may be 'a proper remedy when all of the issues presented in a lawsuit are arbitrable.'"  *Id.* (quoting *Choice Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc.*, 252 F.3d 707, 709-10 (4th Cir. 2001)).

As discussed in Section I.B., *supra*, each claim in Plaintiffs' Amended Complaint falls with the scope of the MAA.  Accordingly, the court will dismiss Plaintiffs' Amended Complaint.

## CONCLUSION

For the reasons set forth herein, Defendant's Motion to Compel Arbitration and Dismiss for Improper Venue is **GRANTED**.

A separate order follows.

_____/S/_____
Julie R. Rubin
United States District Judge

April 14, 2023